[2] The complaint alleges that he has been requested to sue, but he has declined to do so. This justifies the commencement by the plaintiff of the action the trustee should have brought, and furnishes a reason why the latter should be made defendant instead of plaintiff.

[3] In seeking to impress the trust created by Luther upon the stock and bonds still held by the power company, or those already issued to the construction company, it is necessary for the plaintiff to trace the history of the transaction from its beginning to its end, and it is entirely proper to join as defendants all those who have been directly concerned, not necessarily because affirmative relief is asked against all of them, but in order to cut off their equities, if they claim any, and thus establish a clear path to the final relief desired. This is not stating a separate cause of action against each defendant or uniting causes of action in one count. Possibly some of the defendants are not absolutely necessary parties, but any of them may prove to be necessary, and they are therefore all proper parties in accordance with the general rule in equitable actions that all persons who are or may be materially interested in the subject-matter of the action are proper parties, to the end that there may be a complete decree binding upon all. Mawhinney v. Bliss, 124 App. Div. 611, 109 N. Y. Supp. 332, affirmed 194 N. Y. 590, 88 N. E. 1125; Shepard v. Manhattan R. Co., 117 N. Y. 446, 23 N. E. 30; International Paper Company v. Hudson River Co., 92 App. Div. 56, 86 N. Y. Supp. 736. The plea that Luther should have been joined as a party plaintiff has already been referred to.

[4] Corey's demurrer to the effect that he should have been joined as plaintiff rather than as defendant seems to rest upon a mistaken reading of the complaint, in which the pleader was careful to allege that Luther promised to give to each of those whose assistance he invoked one-quarter of what he himself might realize. It is not alleged that he promised to give three-quarters to them collectively. The complaint does not justify the construction that Luther, Burns, Corey, and King became partners or joint adventurers in the enterprise. Its plain reading is that the enterprise remained Luther's, and that what he promised to Burns, Corey, and King was pay for their services, and not profits as partners. We think the demurrers were rightly overruled.

The judgment is therefore affirmed, with costs, with leave to defendants to withdraw their demurrers and answer within 20 days upon payment of costs in this court and the court below. All concur.

---

MEADOWS et al. v. MICHEL.

(Supreme Court, Appellate Division, First Department. May 19, 1911.)

VENDOR AND PURCHASER (§ 135*)—DOUBTFUL TITLE—ENCROACHMENTS.

Where plaintiffs contracted to purchase property from defendant which was shown to have lines so fixed as to constitute an encroachment on the land of an adjoining owner, so that without a release from such owner there would remain outstanding a possible claim of encroachment

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

having reasonable ground of merit, the burden of defending against it should not be imposed on plaintiffs by a decree for specific performance, but plaintiffs could recover earnest money and the costs and expenses of examining the title, etc.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 255–258; Dec. Dig. § 135.*]

Appeal from Special Term, New York County.

Action by James Meadows and others against John S. Michel. Judgment for plaintiffs, and defendant appeals. Affirmed on authority of Meadows v. Michel, 135 App. Div. 213, 120 N. Y. Supp. 319, and on the opinion of Bischoff, J., in the trial court, which is as follows:

The plaintiffs were entitled to a conveyance of property the southerly boundary of which was to be upon a line at right angles to Eagle avenue, commencing 235 feet from the intersection of the line of Eagle avenue with the "northeasterly side of land occupied by the Morrisania Branch Railroad Company," but, according to the weight of the evidence before me, I must hold that the line of the railroad property has been so located as to disclose a difference of 2 feet between the actual southern boundary of the lots in possession and the record boundary, to conform to the contract of sale, with a greater discrepancy as to the northern boundary. The deed from Anna Olsson to the defendant, produced as a means of curing this defect in the title, certainly fails to accomplish that result. While the lot in controversy was the centre lot of 3 at one time owned by Andrew Olsson, who devised the remaining 2 lots—surrounding the property in question—to Anna Olsson, it appears that the latter has conveyed to one Kitscheff the northerly of the remaining lots, and that this grantee's ownership of record of a 25-foot lot conflicts with the northerly boundary of the defendant's lot, upon the theory that the conveyance from Mrs. Olsson is effective to correct the record title as to the southern boundary. Without a release from the owner of the northern lot, there remains outstanding, therefore, a possible claim of encroachment having reasonable ground of merit, the burden of defending against which claim should not be imposed upon the plaintiffs as the defendant's grantees. There should be judgment for the plaintiffs for the return of the earnest money paid, and for $109.12, the expense of examination of the title, with costs. I have indicated upon the proposed findings submitted my disposal of the requests to find. Proposed decision and judgment may be presented on notice of settlement.

J. B. Miller, for appellant.
H. Swain, for respondents.

PER CURIAM. Judgment affirmed with costs, on the authority of Meadows v. Michel, 135 App. Div. 213, 120 N. Y. Supp. 319, and on the opinion of Bischoff, J., in the court below. Order filed.

---

(71 Misc. Rep. 305.)

WALLACE et al. v. WALLACE et al.

(Supreme Court, Special Term, New York County. December, 1910.)

SPECIFIC PERFORMANCE (§ 86*)—MUTUAL WILLS.

Where a contract between a husband and wife to make mutual wills is clearly and definitely established, either by direct evidence or by circumstances warranting an inference that it was made and executed by one of them, equity will enforce specific performance by the other.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 223, 224; Dec. Dig. § 86.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes